UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
JOHN BREDA,                        )
                                   )
          Plaintiff,               )
                                   )
     v.                            )      C.A. No. 24-51 WES
                                   )
DOUGLAS A. COLLINS, et al.,        )
                                   )
          Defendants.              )
_____)

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Senior District Judge.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 32.  For the reasons below, the Motion to Dismiss is GRANTED.

**I.   BACKGROUND**

In February 2015, Plaintiff John Breda, M.D., resigned from his job as a part-time emergency room physician at a medical center run by the U.S. Department of Veterans Affairs ("VA") in Providence, Rhode Island (the "PVAMC").  Am. Compl. ¶¶ 25, 55-56, ECF No. 25.  The PVAMC thereafter filed an adverse-action report ("AAR") in the National Practitioner Data Bank ("NPDB") — a database maintained by the U.S. Department of Health and Human Services ("HHS") — stating that Breda resigned during an investigation into his competence and professional conduct.  Id. ¶¶ 6, 72, 120-121.  Because federal law requires hospitals to

search the NPDB before hiring physicians or granting them clinical privileges, Breda blames the AAR for a loss of career opportunities.  Id. ¶¶ 176-180; see also 42 U.S.C. § 11135(a)(1). He further alleges the AAR should have never been filed.  Am. Compl. ¶¶ 176-180.

These allegations form the basis of this case, as well as two previous lawsuits Breda filed in federal court.  See Breda v. McDonald ("Breda I"), 153 F. Supp. 3d 496 (D. Mass. 2015); Breda v. United States ("Breda II"), No. 20-cv-3308, 2023 WL 2707776 (D.D.C. Mar. 29, 2023), appeal filed, No. 23-5079 (D.C. Cir. Apr. 11, 2023).  Because the Court ultimately finds that Breda's present claims are barred by the doctrine of res judicata, the Court reviews the facts and disposition of each prior lawsuit before turning to the present case.

## A. **Breda I**

In 2015, Breda sued the VA Secretary in his official capacity and three employees of the PVAMC: Wilfredo Curioso, M.D., Sharon Rounds, M.D., and Satish Sharma, M.D.  Breda I, 153 F. Supp. 3d at 499-500.  He claimed that he met with Curioso and Rounds in late 2014 to discuss a series of alleged performance issues.  Id. at 500.  Despite talk of resolving these issues through an alternative dispute process, Rounds ultimately sent PVAMC Director Susan MacKenzie, M.D., a memorandum recommending that Breda be

terminated for deficiencies in patient care, medical knowledge, and interpersonal and communication skills. Id.; see Am. Compl. ¶ 14. MacKenzie agreed with this recommendation and, in a letter dated February 3, 2015, she notified Breda that his employment would terminate on February 13. Breda I, 153 F. Supp. 3d at 500. A day after the letter was delivered, on February 7, Breda emailed Sharma a resignation letter dated February 1. Id. Days later, the PVAMC's Medical Executive Committee ("MEC") determined that Breda should lose his clinical privileges, and Breda was also informed that despite his efforts, he could not backdate his resignation. Id. His departure from the PVAMC was therefore treated as a resignation in lieu of involuntary action, and his resignation was eventually reported to the NPDB. Id.[1]

Breda's legal claims were several. As against the VA, his former employer, Breda alleged due process violations under the U.S. Constitution and the Administrative Procedure Act ("APA"); age discrimination, disability discrimination, and retaliation in violation of federal civil rights statutes; and claims for defamation and breach of contract. Id. As against Curioso, Rounds, and Sharma, he brought claims for interference with

---

[1] Substantially the same allegations appear in Breda's Amended Complaint in the present case. See Am. Compl. ¶¶ 26-44, 53-60, ECF No. 25.

contract, defamation, and intentional or negligent infliction of emotional distress.  Id.

All of Breda's claims were dismissed.  His constitutional due process, civil rights, defamation, interference with contract, and emotional distress claims were dismissed with prejudice.  Id. at 505; Order, Breda v. McDonald, No. 15-13263 (D. Mass. May 17, 2016) (finding court lacked subject matter jurisdiction), ECF No. 34; Stip. Dismissal, Breda v. McDonald, No. 15-13263 (D. Mass. Dec. 2, 2016), ECF No. 54.  Dismissed without prejudice, however, were his APA claim — because he needed to exhaust his administrative remedies before he could bring that claim in court — and his claims for breach of contract, which fell under the exclusive jurisdiction of the Federal Court of Claims.  Breda I, 153 F. Supp. 3d at 503-04.

**B. Breda II**

Breda pursued his administrative remedies on his APA claim – unsuccessfully — and he thereafter filed a second lawsuit alleging multiple violations of the statute.  Breda II, 2023 WL 2707776, at *6; see also Am. Compl. ¶¶ 75-85, Breda v. United States, No. 20-3308 (D.D.C. Sept. 13, 2021), ECF No. 12 ("Breda II Am. Compl.").  The Breda II defendants were the United States, HHS, the HHS Secretary in his official capacity, and the NPDB.  Breda II, 2023

WL 2707776, at *1 n.1; see also Breda II Am. Compl. ¶ 1.

Relevant to Breda's claims was the statutory framework behind the NPDB.  Pursuant to the Health Care Quality Improvement Act of 1986, a "health care entity" must file a report when it "takes a professional review action that adversely affects the clinical privileges of a physician for a period longer than 30 days," or when it accepts the surrender of a physician's clinical privileges, either while the physician is under investigation for incompetence or improper professional conduct, or in exchange for not conducting an investigation.  42 U.S.C. § 11133(a)(1)(A)-(B).  These reports filter up to HHS, which publishes them in the NPDB.  See Breda II, 2023 WL 2707776, at *1.

Breda contended that HHS was wrong to uphold the publication of the AAR because even though he resigned, he did not surrender his clinical privileges, or at least he never intended to surrender them.  Id. at *7.  In the alternative, he argued that even if he surrendered his clinical privileges, his resignation was not reportable because he was never under "investigation," and even if he was, it was not by a "health care entity."  Id. at *12.  The court rejected both arguments and granted summary judgment in defendants' favor.  Id. at *19.  The decision is now on appeal.

Breda v. United States, No. 23-5079 (D.C. Cir. Apr. 11, 2023).

### C. The Present Case

Breda filed the instant lawsuit in February 2023 — one month before the decision in Breda II, and in the same court. Compl., ECF No. 1. The case was transferred to this Court in January 2024, and Breda has since filed an Amended Complaint. Transfer Order (Jan. 17, 2024), ECF No. 17; Am. Compl., ECF No. 25. The Amended Complaint features no fewer than fifteen claims against twelve Defendants, all but two of whom are named in both their official and personal capacities. Am. Compl. ¶¶ 7-19. Because Breda has since conceded to the dismissal of some of these claims, the Court will not delineate them here. See Pl.'s Mem. Opp'n Mot. Dismiss Am. Compl. ("Pl.'s Resp.") 1-2, ECF No. 39 (conceding to dismissal of Counts I, V, XIII, and XV).[2] Furthermore, Breda does not always specify which claims are against which Defendants, and in what capacity. With those caveats in mind, the Court describes each claim for which Breda has not conceded dismissal, identifies the

---

[2] In his Response to the Motion to Dismiss, Breda concedes to the dismissal of "Counts I through V" in one instance and "Counts I and V" in another. Pl.'s Mem. Opp'n Mot. Dismiss Am. Compl. 2, ECF No. 39 (emphases added). In part because Breda is a pro se litigant, the Court proceeds as if he does not concede to the dismissal of Counts II-IV.

Defendants, and previews the arguments in the Motion to Dismiss.

### 1. Claims

As he did in <u>Breda I</u>, Breda brings claims for disability discrimination and retaliation under federal civil rights statutes. First, Breda alleges that he was subjected to a hostile work environment at the PVAMC (Count II). Most of his allegations with respect to this claim involve events occurring after he was terminated from the PVAMC. <u>See</u> Am. Compl. ¶ 249(e)-(p). But some of the allegations concern Breda's time there. <u>See</u> <u>id.</u> ¶ 249(a)-(d).

Second, Breda brings a claim against the VA for retaliation and coercion under the Americans with Disabilities Act ("ADA") (Count III). Breda was diagnosed with Hodgkin lymphoma in 2012. <u>Id.</u> ¶ 251. When he returned to work after completing chemotherapy, however, he alleges that he was assigned to the emergency room despite asking for a different placement because he was immunocompromised. <u>Id.</u> ¶¶ 253-254. Breda alleges similar facts in support of a claim under the Rehabilitation Act (Count IV). <u>Id.</u> ¶ 256.

Breda also brings claims under <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971), which allows plaintiffs to pursue "constitutional claims against federal officials, in their individual capacities, for actions taken under

color of federal law." McCloskey v. Mueller, 446 F.3d 262, 271-72 (1st Cir. 2006) (emphasis omitted). He brings six Bivens claims in total (Counts VI-XI), the first five of which correspond to rights that Breda alleges were denied prior to his departure from the PVAMC. Specifically, Breda contends that he was denied the right to "a fair and impartial hearing with proper notice and opportunity to participate," Am. Compl. ¶ 263; to "confront his accusers," id. ¶ 271; to "procure exculpatory evidence in the [VA's] possession," id. ¶ 279; to "a fair and impartial investigation by the [VA]," id. ¶ 287; and to "defend himself before the [VA]," id. ¶ 295. As for Breda's sixth Bivens claim, he alleges that the defamatory act of publishing and maintaining the AAR in the NPDB constitutes a deprivation of property and liberty in violation of the Due Process Clause. Id. ¶¶ 300-338.

Two claims remain. First, Breda alleges that Defendants have conspired over the course of several years to deprive him of equal protection of the laws in violation of 42 U.S.C. § 1985(3) (Count XII). Id. ¶¶ 339-345. Second, Breda alleges the VA maintained false records about him and knowingly transmitted those records to the NPDB in violation of the Privacy Act of 1974 (Count XIV). Id. ¶¶ 378-393.

### 2. Defendants

Breda brings claims against twelve Defendants, five of whom

8

were also named in the earlier lawsuits. Those five include the VA and HHS Secretaries,[3] who are sued only in their official capacities; and Curioso, Rounds, and Sharma, who are sued in their official and personal capacities. Id. ¶¶ 7-8, 12-13, 15.

The remaining Defendants, sued in both their official and personal capacities, are Matthew Jankowich, M.D., Susan MacKenzie, M.D., Michael Mayo-Smith, M.D., Ryan Lilly, Lawrence Connell, and Ann Deware, who all worked at the VA in different capacities at times relevant to the Amended Complaint, and David Loewenstein, who was Director of the NPDB. Id. ¶¶ 9-11, 14, 16-19.

### 3. Motion to Dismiss

Defendants move to dismiss the Amended Complaint on three grounds. First, they argue that all but one of Breda's claims — to which, coincidentally, Breda has since conceded dismissal — have been the subject of previous litigation and are thus precluded under the doctrine of res judicata. Mot. Dismiss 12-16, ECF No. 32. Second, Defendants assert that Breda's claims are untimely.

---

[3] The Amended Complaint names, in their official capacities, Dennis Richard McDonough as Secretary of the U.S. Department of Veterans Affairs and Xavier Becerra as Secretary of the U.S. Department of Health and Human Services. Am. Compl. ¶¶ 7-8. Their respective successors, Douglas A. Collins and Robert F. Kennedy, Jr., are automatically substituted as parties pursuant to Federal Rule of Civil Procedure 25(d). Automatic substitution also applies with respect to the official-capacity claims against any of the remaining parties who have been succeeded in their official roles.

Id. at 16-22.  Finally, they contend that in no count of the Amended Complaint does Breda state a plausible claim to relief. Id. at 22-36.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"An affirmative defense such as res judicata may be raised in a motion to dismiss under [Rule] 12(b)(6)" when certain conditions are met.  Medina-Padilla v. U.S. Aviation Underwriters, Inc., 815 F.3d 83, 85 (1st Cir. 2016).  First, the facts establishing the defense must be "definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice."  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).  Second, "the facts so gleaned must conclusively establish the affirmative defense."  Id.

## III. DISCUSSION

The Court finds that all of Breda's claims are precluded under the doctrine of res judicata.  Accordingly, this action must be

dismissed, and the Court need not consider the other two arguments raised in Defendants' Motion.

The term "res judicata" encompasses both claim preclusion and issue preclusion.  See Taylor v. Sturgell, 553 U.S. 880, 892 (2008).  "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  Id. (quoting New Hampshire v. Maine, 532 U.S. 742, 748 (2001)).  "Claim preclusion applies if (1) the earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related."  Airframe Sys., Inc. v. Raytheon Co., 601 F.3d 9, 14 (1st Cir. 2010).

**A. Final Judgment on the Merits in the Earlier Suits**

Applying this test becomes trickier with each element, not because the questions are close, but rather because there are many claims — and even more defendants — to sort through.  The first element is straightforward: the earlier lawsuits both resulted in final judgments on the merits.

Dismissal with prejudice is a "final judgment that satisfies the [first] criterion" of claim preclusion.  United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998).  The only claims not

11

dismissed with prejudice in <u>Breda I</u> were Breda's APA claim and his breach-of-contract claims. <u>See</u> <u>supra</u> Section I.A. The court did not have jurisdiction over the breach-of-contract claims. <u>See</u> <u>Breda I</u>, 153 F. Supp. 3d at 503-04. The APA claim dismissed without prejudice in <u>Breda I</u> was a precursor to the APA claims in <u>Breda II</u>, where the court granted summary judgment in the defendants' favor. <u>Breda II</u>, 2023 WL 2707776, at *19; <u>see</u> <u>Dowd v. Soc'y of St. Columbans</u>, 861 F.2d 761, 764 (1st Cir. 1988) ("Summary judgment constitutes a final judgment on the merits for purposes of applying res judicata."). Accordingly, the first requirement of claim preclusion is met.

**B. The Causes of Action in the Earlier and Later Suits**

The second requirement of claim preclusion is that the "causes of action asserted in the earlier and later suits are sufficiently identical or related." <u>Airframe</u>, 601 F.3d at 14. In this context, the term "cause of action" refers to something more than a specific legal theory — e.g., breach of contract or defamation; rather, it "includes 'all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" <u>Id.</u> at 15 (quoting <u>Cunan</u>, 156 F.3d at 114); <u>see also</u> <u>Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.</u>, 48 F.3d 576, 583-84 (1st Cir. 1995). To determine whether the asserted causes of action are

sufficiently identical or related, the Court asks whether they "arise out of a common nucleus of operative facts." Airframe, 601 F.3d at 15 (quoting Mass. Sch. of L. at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 38 (1st Cir. 1998)). In asking that question, the Court considers "factors such as 'whether the facts are related in time, space, origin or motivation,' 'whether they form a convenient trial unit,' and whether treating them as a unit 'conforms to the parties' expectations.'" Id. (quoting In re Iannochino, 242 F.3d 36, 46 (1st Cir. 2001)).

The causes of action asserted in this case arise from the same nucleus of operative facts as those asserted in Breda I and Breda II. For one, the Amended Complaint rehashes practically the same discrimination and retaliation claims that were dismissed with prejudice in Breda I. Compare Am. Compl. ¶¶ 110-134, Breda v. McDonald, No. 15-13263 (D. Mass. Nov. 6, 2015), ECF No. 11 ("Breda I Am. Compl."), with Am. Compl. ¶¶ 249-256. Furthermore, notwithstanding the new legal theories that Breda raises in this case, the remaining causes of action to which he has not conceded dismissal essentially concern his departure from the PVAMC and the publication of the AAR in the NPDB.[4] Breda did not bring claims

---

[4] The § 1985(3) claim includes allegations regarding the PVAMC's Medical Executive Committee ("MEC"), which Breda argues revoked his clinical privileges without authority to do so. Am. Compl. ¶ 339. The Breda II court considered this argument at

under <u>Bivens</u>, § 1985(3), or the Privacy Act in the earlier lawsuits, but that does not mean he now gets to relitigate the allegations that gave rise to his claims in <u>Breda I</u> and <u>Breda II</u>.[5] To flip the metaphor, Breda cannot pour old wine into new wineskins. The Court therefore finds that the second element of claim preclusion is met.

**C. The Parties in the Earlier and Later Suits**

The third and final requirement of claim preclusion is that "the parties in the two suits are sufficiently identical or closely related." <u>Airframe</u>, 601 F.3d at 14. When a later suit includes a new defendant, "claim preclusion applies if the new defendant is 'closely related to a defendant from the original action . . . ,' not merely when the two defendants are in privity." <u>Id.</u> at 17 (quoting <u>Negrón-Fuentes v. UPS Supply Chain Sols.</u>, 532 F.3d 1, 10 (1st Cir. 2008)). To illustrate, if a plaintiff names an employer as a defendant in one suit and its employees — acting within the scope of their employment — in another, those defendants are sufficiently closely related for the purposes of claim preclusion.

---

length. <u>See</u> <u>Breda v. United States</u>, No. 20-3308, 2023 WL 2707776, at *3-5, 14, 17-18 (D.D.C. Mar. 29, 2023).

[5] To be sure, Breda's allegations against Lawrence Connell and David Loewenstein involve incidents that occurred outside the timeframes of <u>Breda I</u> and <u>Breda II</u>, but these allegations are just further attempts to relitigate the publication of the AAR. <u>See</u> Am. Compl. ¶¶ 9, 11, 95, 109, 175.

Silva v. City of New Bedford, 660 F.3d 76, 80 (1st Cir. 2011). But "a person who is sued in one capacity (whether official or individual) cannot assert a defense of claim preclusion in a later action in which he is sued in a different capacity." Goldstein v. Galvin, 719 F.3d 16, 23 (1st Cir. 2013). That is because "a person sued in his official capacity is a different party," as a matter of law, "than the same person sued in his individual capacity." Id.

To begin, the Court finds that all Defendants sued in their official capacities are sufficiently identical or closely related to those named in the earlier suits. Breda has already sued the VA and HHS Secretaries, and it does not matter that the people holding those offices have changed. See Kentucky v. Graham, 473 U.S. 159, 166 n.11 (1985) (citing Fed. R. Civ. P. 25(d)). As for the remaining Defendants, all are sued in their official capacities as employees of the federal government. When a federal official is sued in their official capacity, it "is not a suit against the official but rather is a suit against the official's office," making it "no different from a suit against the [federal government] itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). The Defendants sued in their official capacities are thus no different, legally speaking, from those in the earlier suits. Therefore, each element of claim preclusion is

15

satisfied with respect to all claims against the Defendants in their official capacities.

What remain are the claims against Curioso, Rounds, Sharma, Jankowich, MacKenzie, Mayo-Smith, Lilly, Connell, Loewenstein, and Deware — all federal employees — in their individual capacities.[6] Relevant to these claims is the above-stated principle that an employer and its employees (when acting within the scope of their employment) are sufficiently closely related to satisfy the third element of claim preclusion. Silva, 660 F.3d at 80. The Court addresses the claims against Curioso, Rounds, and Sharma as one unit before proceeding to the remaining Defendants in turn.

Whether an employee was acting within the scope of their employment is a question of state law where the conduct occurred. Breda I, 153 F. Supp. 3d at 504 (citing Kelly v. United States, 924 F.2d 355, 357 (1st Cir. 1991)). In Rhode Island, which follows the Restatement (Second) of Agency § 228, an employee's conduct falls "within the scope of employment if '(a) it is of the kind he is employed to perform; (b) it occurs substantially within the

---

[6] Defendants seek to substitute the United States for the federal employee Defendants pursuant to 28 U.S.C. § 2679(d)(1), a provision of the Westfall Act. Mot. Dismiss 2 n.1. Because the Westfall Act does not apply to actions against federal employees for violations of the U.S. Constitution or federal statute, the Court will not permit substitution here. See 28 U.S.C. § 2679(b).

authorized time and space limits; and (c) it is actuated, at least in part, by a purpose to serve the [employer].'"    Id. at 504-05 (brackets added and omitted) (quoting Restatement (Second) of Agency § 228 (Am. L. Inst. 1958)); see also Pineda v. Chase Bank USA, N.A., 186 A.3d 1054, 1058-59 (R.I. 2018) (following Second Restatement in recent case).

Regarding Curioso, Rounds, and Sharma, all three were named as defendants in Breda I.    Breda I, 153 F. Supp. at 499.    Breda argues that his present claims against them are not precluded because now he alleges their conduct exceeded the scope of their authority as federal employees, whereas in Breda I the court found they had acted within that scope.    Pl.'s Resp. 4-5.    What Breda fails to mention is that he explicitly alleged in the earlier case that Curioso, Rounds, and Sharma acted "beyond the scope of their function as [VA] employees."    Breda I Am. Compl. ¶ 176; see id. ¶ 175.    Reviewing this argument in Breda I, the court found Breda had not shown Curioso, Rounds, or Sharma to have acted outside the scope of their employment during the incidents alleged.    Breda I, 153 F. Supp. 3d at 505.    Because the causes of action asserted against Curioso, Rounds, and Sharma are the same as those asserted in Breda I, nothing in this case counsels a different result: the parties are identical, and the claims against them are therefore

17

precluded.

Seven Defendants thus remain. Three of them — Jankowich, MacKenzie, and Mayo-Smith — were employees of the VA in 2015 and played some role in either Breda's departure from the PVAMC or the AAR's publication in the NPDB. Am. Compl. ¶¶ 14, 16, 17. Among the other four Defendants, Lilly was the New England Regional Director of the VA's healthcare system in 2019, id. ¶ 18; Connell was the PVAMC's Director in 2023, id. ¶ 11; Loewenstein was the Director of the NPDB when Breda filed the Amended Complaint, id. ¶ 10; and Deware was a PVAMC employee in 2021, id. ¶ 19.

First up is Jankowich, who in 2015 chaired a committee that found Breda had resigned from the PVAMC during an investigation into his professional competence and conduct. See Am. Compl. ¶¶ 16, 68, 78, 105-106, 108, 125, 149, 154-155, 165-166, 172. Breda alleges the committee (which was convened by MacKenzie, the PVAMC's Director at the time) did not follow certain provisions of the "VA Handbook" in reaching that conclusion. Id. ¶¶ 68, 108. But none of the allegations cut against the notion that Jankowich, in chairing the committee at MacKenzie's request, was engaged in conduct (a) of the kind he was employed to perform, (b) at a time and place he was expected to do so, and (c) in the service of his employer, the VA. See Breda I, 153 F. Supp. 3d at 504-05. Because the allegations against Jankowich all concern actions within the

scope of his employment, the Court finds he is sufficiently closely related to defendants named in the prior suits.

The next Defendant is MacKenzie, who, as just mentioned, was the PVAMC's Director (and therefore a VA employee) when Breda left his job there. Although MacKenzie was not named as a defendant in the earlier lawsuits, it is clear from the courts' decisions in those cases that her connection to events at the heart of Breda's claims was known. See id. at 500; Breda II, 2023 WL 2707776, at *3-4, 7, 14, 17. Breda alleges that MacKenzie allowed the AAR to be published in the NPDB while knowing it was false and violated the VA Handbook while overseeing other aspects of his separation from the PVAMC. See Am. Compl. ¶¶ 39-40, 63-68, 103, 137-160. As with the allegations against Jankowich, none of the allegations against MacKenzie show that she was acting outside the scope of her employment with the VA during the events described in the Amended Complaint. Therefore, the Court finds that she is sufficiently closely related to defendants named in the earlier suits.

As the New England Regional Director for the VA's healthcare system ("VISN-1") in 2015, Mayo-Smith reviewed an appeal from Breda seeking the AAR's removal from the NPDB. Id. ¶ 17. Mayo-Smith denied the appeal in what Breda calls a "deceitful letter" that disregarded the VA Handbook and, among other faults, amounted to

an act of harassment and retaliation.  Id. ¶ 174; see id. ¶¶ 104-105, 249(l).  For what it is worth, multiple references to Mayo-Smith's letter appear in the Breda II court's decision on cross-motions for summary judgment.  See Breda II, 2023 WL 2707776, at *4-5, 14, 16 n.11, 17.  For the same reasons as for the Defendants above, the Court finds that Mayo-Smith was acting within the scope of his employment at all times described in the Amended Complaint and, therefore, he is sufficiently closely related to defendants named in the earlier suits.[7]

Lilly was the Director of VISN-1 in 2019.  Am. Compl. ¶ 18.  According to the Amended Complaint, Lilly misrepresented the facts and policies relevant to Breda's claims in a letter he sent in response to a "Senatorial Inquiry from Senator[s] Warren and Markey regarding" the AAR.  Id. ¶ 136; see id. ¶¶ 18, 110-114, 169-170.  Because none of Breda's allegations suggest that Lilly was acting outside the scope of his employment when he wrote this letter, the Court finds that he is sufficiently closely related to defendants

---

[7] The Court takes judicial notice of the fact that the VA New England Healthcare System ("VISN-1") is in Bedford, Massachusetts.  See VISN 01, U.S. Dep't of Veterans Affs. (Mar. 7, 2025), https://department.va.gov/integrated-service-networks/visn-01.  Like Rhode Island, Massachusetts follows the Restatement (Second) of Agency § 228.  Breda I, 153 F. Supp. 3d at 505.

named in the earlier suits.

Connell was the PVAMC's Director in 2023 when he denied Breda's request to amend or correct the VA's records on Breda and to retract the AAR.  Id. ¶¶ 11, 109, 175.  Although Connell's involvement in this matter falls outside the timeframe of the earlier suits, the Court nonetheless finds that his actions were not outside the scope of his employment with the VA, and he is thus sufficiently closely related to previously named defendants.

Next is Loewenstein, who was the NPDB's Director in 2023 when he similarly denied Breda's request to remove the AAR.  Id. ¶¶ 9, 95; see also id. ¶¶ 346-377 (describing allegations specific to Count XIII, for which Breda has conceded dismissal).  The NPDB is maintained by HHS.  Breda II, 2023 WL 2707776, at *1.  Because the Court finds that Breda does not show Loewenstein to have acted outside the scope of his employment with HHS, he is sufficiently closely related to previously named defendants.

The last Defendant is Deware, who in 2021 was a Credentialing and Privileging Program Manager at the PVAMC when she sent a letter to the NPDB "admitt[ing] that the MEC had no authority to revoke clinical privileges." Am. Compl. ¶ 69; see id. ¶ 19.  As with all previous Defendants, the Court finds that Deware was not acting outside the scope of her employment with the VA during the circumstances alleged in the Amended Complaint; therefore, she is

21

sufficiently closely related to defendants named in the earlier lawsuits.

* * *

"Plaintiffs cannot obtain a second chance at a different outcome by bringing related claims against closely related defendants at a later date." <u>Airframe</u>, 601 F.3d at 14.  That seems to be exactly what Breda has tried to do in this case.

All three requirements of claim preclusion are met with respect to each claim, as against each Defendant, and in each capacity in which they are sued.  Breda's claims are therefore barred under the doctrine of res judicata, and the Court does not need to address Defendants' two remaining arguments in support of their Motion to Dismiss.

## IV.    CONCLUSION

For the reasons above, the Court GRANTS Defendants' Motion to Dismiss, ECF No. 32.


IT IS SO ORDERED.

_____
William E. Smith
Senior District Judge
Date:  March 28, 2025

22